# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

NANCY FERRELL DAVIDSON                                                    PLAINTIFF

v.                                                      No. 3:19-cv-309-BJB

LOUISVILLE METROPOLITAN                                                   DEFENDANT
GOVERNMENT

* * * * *

## MEMORANDUM OPINION & ORDER

The Louisville Zoo fired Nancy Ferrell Davidson for leaking confidential and privileged information to her friend Racheal Butrum. Davidson denied leaking such information and claims she merely advised Butrum on her sex-discrimination case against the Zoo. Davidson believes this limited advice was a protected activity and that the Zoo is lying about her involvement as a pretext to fire her and harm her future career prospects. So Davidson sued the Louisville Metropolitan Government for retaliation and wrongful termination under Title VII, violation of the Kentucky Whistleblower Act, defamation, "outrage," and tortious interference with a contract. The Zoo moved for summary judgment (DN 19), arguing that the leaks were not a protected activity, the firing was justified, the disclosure didn't amount to whistleblowing, the Zoo didn't act with malice or outrageously, and the Zoo cannot tortiously interfere with its own contract.

The Zoo is correct. The record indicates that no jury could reasonably conclude it lacked a good-faith belief that Davidson was leaking confidential information to her friend. Aside from her own bare-bones denial, Davidson has no evidence to the contrary. This means the Zoo was justified in firing her, didn't maliciously defame her, and didn't act outrageously. Moreover, Davidson's conduct is neither a protected activity nor a disclosure to a proper authority. So the Court grants the Zoo's motion for summary judgment (DN 19).

## I. THE SUMMARY-JUDGMENT RECORD

In 2013 the Louisville Zoo, an agency of the Louisville Metro Government, hired Nancy Davidson to be an administrative assistant for Director John Walczak. Verified Complaint (DN 1) ¶ 6. Davidson's job gave her access to Walczak's emails, files, and calendar. *Id.* She was aware that some of the information she had access to was confidential and couldn't lawfully be shared without Walczak's permission. Hearing Transcript (DN 19-1) at 95; Davidson Admissions (DN 19-3) at No. 5, 6. One

1

reason Davidson knew she couldn't share this information was because she acknowledged the Zoo's policies on ethics, trust, protecting confidential information, accessing attorney-client privileged communications, and related issues. Policies (DN 19-12) at 3–7; Acknowledgement of Policies (DN 19-2). As far as the record indicates, Davidson's first few years at the Zoo were uneventful.

In September 2016, however, Davidson's friend Racheal Butrum filed an EEOC complaint against the Zoo for sex discrimination. Butrum was hired in 2014 as a facilities manager and quickly began to complain that she was excluded from meetings and bypassed by subordinates. Compl. ¶¶ 9–11. After returning from bereavement leave, she was immediately written up. So she decided to file complaints with HR and the EEOC. ¶ 16. Not long thereafter, Assistant Director Stephanie Moore warned Davidson to stay away from Butrum. ¶ 13. Davidson believed much of Butrum's story, which alleged that the Zoo was falsely revising the HR report and refusing to let Butrum see it. ¶ 15. Butrum asked Davidson to give her copies of correspondence to help her case. ¶ 16. Butrum claims she denied this request and never handed over confidential information. ¶¶ 16, 18. Instead, she told Butrum to file an Open Records Request to get public information. *Id.* And Davidson discussed public matters with Butrum as she did with other employees. *Id.* In 2017, when Butrum resigned, Davidson told her to get her emails off her work account because it would soon be shut down. ¶¶ 19–20. Butrum took a different job at the Zoo but continued to help Walczak until her replacement was trained. ¶¶ 22–24.

In the meantime, Butrum filed a sex-discrimination case against the Zoo under Title VII. *Butrum v. Louisville Metro. Gov't*, No. 3:17-cv-330, 2020 WL 1518629, at *1 (W.D. Ky. Mar. 30, 2020). During discovery, the Zoo became concerned that Butrum had received confidential and attorney-client privileged documents based on the specific nature of her discovery requests. *Id.* at *1–2. The requested non-public information, according to the Zoo, couldn't have been known by Butrum or her counsel "absent a breach" of Walczak's computer. *Id.* at *2. So the Zoo sought a discovery hearing with the magistrate judge to figure out who the potential mole was. *Id.* at *2. At first, Butrum claimed a "John Doe" asked if she wanted confidential information, but insisted she did not solicit nor accept such material. *Id.* Although the court expressed some concern about the significant overlap, "in both form and order," between the requests and confidential emails, this didn't necessarily prove that Butrum or her attorney committed any wrongdoing. *Id.* Rather, the "misconduct appeared to have been committed by a third party." *Id.* So the court ordered Butrum not to communicate with "John Doe" or with any Louisville Zoo employee during and about the lawsuit. *Id.*

Butrum then made very specific open record requests that the Zoo, alarmed at her detailed knowledge regarding case-related material it considered confidential, denied as privileged. Open Records Requests and Responses (DN 19-10); *id.* at *3–4. In response, a discovery request from the Zoo asked Butrum to identify John Doe and what she received from "him." *Id.* at *2. Butrum then admitted that Davidson had

provided her screenshots of confidential emails, calls, and documents. *Id.*; Butrum Interrogatory (DN 19-7). Butrum disclosed several selective text messages and screenshots shared between the two. Davidson's First Texts (DN 19-8); Butrum Deposition (DN 19-9) at 160. At another hearing on this issue, Butrum admitted that she solicited and received several documents from Davidson. *Butrum*, 2020 WL 1518629, at *5–7; Hearing Transcript at 14, 29, 37–8, 102. Davidson testified at the hearing, admitted she sent the texts, but denied that she shared confidential information. Hearing Transcript at 108–9; *Butrum*, 2020 WL 1518629, at *7. The court sanctioned Butrum for her initial false statement that a John Doe was responsible, and for seeking and receiving confidential Zoo information from Davidson. *Butrum*, 2020 WL 1518629, at *11.

During the Butrum lawsuit, as the Zoo's suspicions increased, the Zoo began investigating Davidson—though she remained employed. Immediately after the first discovery hearing in March 2018, Butrum told Davidson her name was mentioned. *Butrum*, 2020 WL 1518629, at *5. Davidson then contacted Zoo management and its counsel to discuss the issue. Ans. to Interrogatory (DN 19-13) No. 18; Davidson Affidavit. (DN 19-6). Nothing happened for several more months. Then, in September 2018, the Zoo fired Davidson based on substantial evidence that she violated Zoo policies by leaking confidential information to Butrum. Termination Letter (DN 19-11).

This lawsuit began when Davidson sued the Louisville Metropolitan Government for retaliation and wrongful termination under Title VII, violation of the Kentucky Whistleblower Act, defamation, outrage, and tortious interference with a contract. During discovery in this case, more of Davidson's text messages revealed that she was texting Butrum about confidential emails and worked to keep their texts secret. Motion for Summary Judgment (DN 19) at 10–14 (showing texts from Davidson's Second Texts (DN 19-14)); *Butrum*, 2020 WL 1518629, at *8. The Zoo moved for summary judgment on all counts.

## II. ANALYSIS

### A. The Zoo's motion for summary judgment is no longer premature

The Zoo filed its motion for summary judgment approximately three months before the discovery deadline, DN 9, which the Court later extended. DN 32. Davidson first argued—in her response filed before the discovery period ended—that the Court should deny summary judgment and allow discovery to proceed because new evidence still could've raised a material dispute. Butrum's Response (DN 26) at 3–8. But now the Court's discovery deadline has long since passed. Yet Davidson neither filed a supplemental brief nor notified the Court about any new evidence. So it is impossible to conclude that a motion for summary judgment is premature at this juncture, as all relevant discovery should have been completed and brought to the Court's attention. Davidson even seems to agree, given that she asked the Court to

hold the summary-judgment motion in abeyance until discovery ended. Response at 7–8. Discovery is now complete with no relevant changes, and the motion is ripe for decision.

## B. Davidson's retaliation and wrongful-termination claims fail

Davidson's primary claim is that the Zoo violated Title VII by retaliating against and wrongfully terminating her for assisting in a discrimination investigation. Compl. ¶¶ 3, 42–46. Davidson alleges she aided Butrum's discrimination investigation and that, as a result, the Zoo made false statements to justify firing her. *Id.* Retaliation claims are governed by a burden-shifting framework that requires a prima facie case that (1) the plaintiff was engaged in a protected activity, (2) the defendant knew this, (3) the defendant took an adverse employment action against plaintiff after the protected conduct, and (4) there was a causal connection between the protected conduct and the adverse employment action. *See Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–05 (1973)). If a plaintiff can make this prima facie showing, the burden shifts to the defendant to offer "legitimate, non-retaliatory reasons for its actions." *Id.* And if the defendant satisfies that burden, the plaintiff must "put forward competent evidence from which a reasonable jury could conclude that the stated reason is merely pretextual." *Id.*

Under this framework Davidson's claims fail because she wasn't engaged in a protected activity and, in any event, the Zoo had a legitimate non-pretextual reason for firing her.[1]

**1. Davidson's assistance to Butrum was not a protected activity.** Congress prohibited employers from retaliating against employees who oppose unlawful employment practices or participate in an investigation. 42 U.S.C. § 2000e–3(a); *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). Davidson's only asserted protected conduct was allegedly assisting Butrum's EEOC investigation. Response at 9–10.[2] But she denies leaking anything confidential,

---

[1] Wrongful termination under Title VII generally involves a person claiming discrimination based on their membership in a protected class. *See Young v. Sabbatine*, 238 F.3d 426 (6th Cir. 2000). But Davidson claims she was fired for her assistance in an investigation, not because she was part of a protected class. Compl. ¶¶ 3, 42–46. So the retaliation framework is the relevant one. But in any event, the burden-shifting framework for the retaliation and wrongful-termination claims is largely the same, especially with respect to the employer's legitimate justification. *Morris v. BellSouth Telecommunications, Inc.*, 302 F. Supp. 2d 515, 521–22 (M.D.N.C. 2004) ("*McDonnell Douglas* burden shifting scheme applies to retaliation claims as well.").

[2] In any event, Davidson's conduct wasn't oppositional because she wasn't involved in or asked to be part of the allegedly discriminatory conduct. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008). And Davidson asserted this claim on the basis of participation, not opposition. Response at 9 ("Plaintiff has averred that she did in fact engage

claiming she merely told Butrum that the Zoo had conducted an internal human-recourses investigation, that the Zoo kept falsely revising the resulting report, and that Butrum should file an Open Records Request for that material. *Id.* (citing Compl. ¶¶ 12–18); Davidson Affidavit at 1.

How such advice aided Butrum's EEOC investigation or any other protected activity is not apparent. Davidson is not mentioned in the EEOC complaint, evidence, or investigation. *See generally* EEOC Investigation (DN 19-4). This is undisputed. Nor does she allege the Zoo told her to do anything unlawful regarding the investigation. *Contra Navy Fed. Credit Union*, 424 F.3d at 407. So either Davidson's participation was minimal, or else she attempted to "assist" by leaking confidential information in a manner that violated workplace policies *and* led to court sanctions. *See Butrum*, 2020 WL 1518629, at *7, 9, 12. This seriously undermines any argument that Davidson's actions were a "reasonable" accommodation of her and her employer's needs. *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 726 (6th Cir. 2008). The leaked information obviously wasn't directly sought in an investigation. *See Aldrich v. Rural Health Servs. Consortium, Inc.*, 579 F. App'x 335, 337 (6th Cir. 2014) (forwarding confidential work emails to a personal account didn't amount to participation in a co-worker's suit because it was neither requested for litigation nor a reasonable step in opposition to unlawful conduct); *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373–77 (5th Cir. 1998) (informally releasing confidential information to a third-party is not participation and such release was not reasonable for opposition); *O'Day v. McDonnell Douglas Helicopter Co.,* 79 F.3d 756, 763 (9th Cir. 1996) ("rummaging through his supervisor's office for confidential documents, but also copying those documents and showing them to a co-worker" was unreasonable and not a protected activity). And disclosing confidential information to non-attorney third parties does not constitute reasonable oppositional activity to alleged unlawful employment practices. *See Niswander*, 529 F.3d at 727 (using confidential documents to jog one's memory isn't reasonable for opposition).

The surreptitious activities described in these precedents fit the description in the record here of Davidson's involvement in Butrum's suit. Davidson's conduct, therefore, does not qualify as protected activity that could give rise to retaliation liability for the Zoo.

**2. The Zoo had a legitimate non-pretextual justification for firing Davidson.** Even assuming Davidson had made out a prima facie case for retaliation, the Zoo would still have a chance to provide a "legitimate, nondiscriminatory reason" for its challenged employment actions. *Tex. Dept. of Cmty. Affairs v. Burdine*, 450

---

in protected activity assisting Ms. Butrum in the EEOC investigation."); *cf. Hamade v. Valiant Gov't Servs.*, LLC, 807 F. App'x 546, 549 (6th Cir. 2020) ("Plaintiff repeatedly and explicitly, including at oral argument, stated that his argument falls exclusively under the participation clause. This concession is fatal to plaintiff's claim.")

U.S. 248, 254 (1981).[3] The defendant can carry this burden by raising "a genuine issue of fact" through "admissible evidence," *id.* at 254–55, that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action," *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). One legitimate justification for firing an employee is that the employee breached "neutral" policies, such as confidentiality policies. *See Niswander*, 529 F.3d at 727–28 (employer was justified in firing employee for handing over confidential emails in discrimination lawsuit); *Lioi v. New York City Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d 567, 587 (S.D.N.Y. 2012) (employer justified in firing employee for sending confidential emails in violation of company policy). The Zoo asserted that it fired Davidson for leaking of confidential communications, including emails to and from Zoo attorneys, in violation of company policy. MSJ at 14; Termination Letter. This is a legitimate justification that the record supports.

The Zoo has several policies that prohibit an employee from disseminating confidential information, accessing privileged attorney-client communications, and betraying the trust of supervisors. Policies at 3–4 (Ethical Policies 1.5(5)(b), (c), (g), and (*l*) (requiring honesty, cooperation, and trust)); 6–7 (Security and Technology Policies 3.1.1(b) (protecting confidentiality), (c) (limiting access to attorney-client privileged communications), (h), (j), (k), (l) and (r)). A violation of any of these policies can result in termination. *Id.* at 4 (1.5(5)), 7 (3.1.2.). Davidson was hired as Walczak's personal assistant and knew that her access to his emails and calendar "were to remain confidential," Hr. Tr. at 95, that "she was not to share the contents of Mr. Walczak's emails with anyone without his permission," Davidson Admissions at No. 5 & 6, and that these policies applied to her, *see* Acknowledgement of Policies.

These policies became relevant when Butrum's discovery requests included details of confidential information that only those with access to Walczak's emails should be aware of. Butrum Interrogatory. When Butrum was questioned about where she received this information, she eventually admitted Davidson had sent it via text messages, some of which she produced. *Id.*; Davidson's First Texts at 3–4, 31, 35, 70–76. And Davidson in turn admitted she sent these messages. Hr. Tr. at 108–9. Butrum also revealed screenshots she received from Davidson of privileged and confidential emails, memos, and calendar entries accessible only by HR employees, Walczak, and the Zoo's counsel. Butrum Depo. at 160. Butrum also made

---

[3] While the Zoo focuses on causation rather than justification, the arguments and evidence overlap significantly. The Zoo argues Davidson cannot prove causation because it would've fired Davidson even if her conduct was protected because she intentionally violated their policies. MSJ at 18–19. This seems to admit rather than refute causation. Much of the Zoo's evidence, however, goes to the justification for rather than the cause of her termination. *Id.* at 3–14. And proving that its reason for firing Davidson was justified raises causation issues. *See below* at II.B.3. If the Zoo fired Davidson based on a good-faith belief she was leaking, then the cause of her firing was justified on that belief, not the narrow subset of her activity that she defines as protected.

Open Records requests with specific details of confidential information, which she admits she got from Davidson. *See generally* Open Records; Hr. Tr. at 14, 29, 37–8, 102 (Butrum explaining where she got the information for these requests).

Based on this abundant evidence, the Zoo fired Davidson for violating several Zoo policies. *See* Termination Letter at 1. Subsequent evidence has reinforced the Zoo's determination that Davidson violated its policies. The court in Butrum's litigation sanctioned her for initially falsely testifying that she did not receive or solicit confidential documents from Davidson. *Butrum*, 2020 WL 1518629, at *7, 9, 12. And more of Davidson's texts disclosed in this case reveal that she was texting Butrum about confidential emails, that Davidson knew these emails were confidential, and that she could get in trouble and wanted to delete the messages as a result. MSJ at 10–14 (excerpts from Davidson's Second Texts); *Butrum*, 2020 WL 1518629, at *8. Even if the Zoo didn't have all this information when it fired Davidson, the evidence corroborates the legitimacy of its decision and would—considered alongside the rest of the record—preclude a reasonable jury from finding the Zoo's justification was illegitimate or, as discussed below, pretextual.

So the burden returns to Davidson to prove that the Zoo's proffered justification is a "pretext for discrimination." *Hicks*, 509 U.S. at 515–16. This is typically done by showing either: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Davidson must produce sufficient evidence that a reasonable jury could find that the Zoo engaged in intentional discrimination by a preponderance of the evidence. *Hicks*, 509 U.S. at 507; *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (evidence must allow factfinder to reasonably reject defendant's explanation and infer discrimination).

Davidson's only real argument for pretext rests on her denial that she leaked confidential information, implying that the Zoo is wrong to say it fired her for leaking and must be using that as a (false) pretext to fire her. Response at 10–11; Compl. ¶¶ 12–18. That inference doesn't necessarily follow, however, and isn't supported by evidence of pretext. And Davidson's premise—that she wasn't leaking—is flatly contradicted by the record. Butrum admitted that Davidson sent her confidential emails, Davidson's texts discuss emails and her access to them, screenshots show confidential emails Davidson disclosed, and the newly discovered texts show Davidson's knowledge that the Policies precluded her activity.[4] In short, the "parties

---

[4] The evidence, as described above, is abundant and crystal clear. *See, e.g.,* Butrum Interrogatory (answering that Davidson had been giving her confidential information); Davidson's First Texts at 3–4, 31, 35, 70–76 (texting about getting emails, wanting to lay low and maintain access to confidential information, and screenshots of confidential documents); Hr. Tr. at 108–9 (Davidson admitting she sent the texts); 14, 29, 37–8, 102 (Butrum

tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe" Davidson's account of pretext.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Given the mass of objective evidence that Davidson leaked confidential information, no reasonable jury could believe her story that she *didn't* leak confidential communication and instead that the Zoo *did* offer a pretextual explanation for her firing.

Accepting Davidson's denial for the moment, however, the Zoo's justification can still be non-pretextual even if it is "ultimately found to be mistaken, foolish, trivial, or baseless."  *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).  The question centers on the employer's intent.  *Id.*  So a plaintiff "must allege more than a dispute over the facts upon which his discharge was based.  [She] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action."  *Braithwaite*, 258 F.3d at 494.  As explained, the Zoo had plenty of evidence to believe that Davidson leaked confidential information.  So even if this belief was wrong, nothing in the record casts doubt on its good faith.  Davidson provides no evidence that the Zoo lied or had ulterior motives.  In fact, she does nothing to even undermine the Zoo's evidence of her leaks.  *See, e.g.,* Termination Letter (noting Davidson declined to explain her conduct).  Her mere denial is insufficient. *See Blount v. Stanley Eng'g Fastening*, No. 5:19-cv-109, 2022 WL 949923, at *13 (W.D. Ky. Mar. 29, 2022).  As a result, Davidson cannot show that the Zoo's justification—even if legitimate—was nevertheless pretextual.

**3. This also reveals a causation problem.**  To prove causation, a plaintiff must prove that the defendant would not have fired her but for a retaliatory motive.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  Davidson contends she engaged in "protected conduct" by merely advising Butrum on the state of the investigation and how to file an open records request—without leaking confidential information.  Response at 9–10; Compl. ¶¶ 12–18.  By framing the protected activity so narrowly, it is difficult for Davidson to prove that she was fired for that "counseling," as opposed to the leaking on which the City based its decision.  Even if Davidson didn't leak and her role were actually as minimal as she says, the Zoo's good-faith *belief* that she was leaking confidential information—even if mistaken— justified its decision as discussed above.  Ultimately, Davidson has identified no evidence that she was fired for her allegedly narrow protected conduct rather than because the Zoo reasonably believed she was leaking confidential information.  So Davidson cannot prove but-for causation, especially in light of the record evidence showing an alternative justifiable cause for her firing.

**4. An uncontested unemployment appeal does not create issue preclusion.**  In an unexpected twist, Davidson contends that the Zoo's refusal to

---

explaining where she got confidential information for records requests);  MSJ at 10–14 (Davidson's Second Texts (showing that she knew she was sending confidential information)).

defend against her appeal for state unemployment benefits collaterally estops this Court from concluding that the Zoo was justified in terminating her. Compl. ¶ 58. This contention is aggressive, to say the least, and would carry serious consequences for employees seeking benefits after departing any employer that might have a concern about a latent employment lawsuit. Regardless, the Supreme Court has explicitly rejected Davidson's position, holding that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 796 (1986). The Kentucky Supreme Court has similarly held that "informal procedures utilized in unemployment compensation proceedings do not afford 'any party a full, true opportunity to litigate issues, or even encourage any meaningful participation in the process.'" *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001). Davidson seems to admit that her state unemployment appeal cannot preclude anything as a formal matter. Response at 10–11. But she argues that it "speaks volumes" that the Zoo did not oppose her appeal and brings new evidence once in court. *Id.* Whatever the Zoo's reasons for not contesting Davidson's appeal, they are irrelevant to this proceeding. The record in this case contains overwhelming evidence that the Zoo had a legitimate justification for terminating Davidson. And Davidson has no evidence of pretext. That is all that matters.

## C. Davidson was not a whistleblower

Davidson alleges that the Zoo violated the Kentucky Whistleblower Act when it fired her for disclosing "false statements." Compl. ¶¶ 49–50; KRS § 61.101. A claim under the Whistleblower Act requires the employee to establish that: "(1) the employer is an officer of the state; (2) the employee is employed by the state; (3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an *appropriate body or authority*; and (4) the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure." *Davidson v. Commonwealth*, 152 S.W.3d 247, 251 (Ky. Ct. App. 2004) (emphasis added). Davidson didn't disclose anything to an "appropriate body or authority," so she is not a whistleblower within the meaning of the statute.

This entire suit exists because Davidson fed confidential information to a plaintiff for use in a civil suit. Butrum Interrogatory; Butrum's First Texts (DN 19-8); Butrum Depo. at 160. A private litigant is not an "appropriate body or authority." Davidson doesn't argue otherwise. Instead, she briefly asserts that she made the relevant "disclosures" not to Butrum, but rather to Director Walczak and Assistant Director Moore about their own misconduct and to the Zoo's counsel once Butrum named her as the leaker. Response at 14; Ans. to Interrogatory No. 18 (relevant disclosures occurred March 7, 8, and August 14, 2018).

Neither Zoo management nor counsel would be an "appropriate body," either. Kentucky law doesn't treat a complaint to the person complained about as a

disclosure. "Criticism of the alleged wrongdoers directed only to the wrongdoers themselves is not normally regarded as whistleblowing." *Harper v. Univ. of Louisville*, 559 S.W.3d 796, 810 (Ky. 2018) (citing *Horton v. Dep't. of Navy*, 66 F.3d 279, 282 (Fed. Cir. 1995)). "An employee cannot gain whistleblower status and the protections that come with that status by simply complaining to her boss about what she perceives as the boss's misconduct." *Id.* (complaining to boss about boss's wasteful spending); *see also Bogart v. Univ. of Kentucky*, 766 F. App'x 291, 297–98 (6th Cir. 2019) (employee raising concerns to supervisor about supervisor's own alleged misconduct does not constitute a disclosure). Davidson's "disclosure"—at least as she describes it here—concerned her manager's handling of Butrum's complaint, yet she "disclosed" her views only to the manager and lawyers already involved in that suit. *See* Davidson Aff. at 1; Compl. ¶¶ 42, 45, 49. She offers no explanation why the lawyer defending the manager's conduct was in a position to "remedy or report" the manager's behavior. And she wasn't fired for these communications in any event; she was fired for leaking to Butrum.

So the caselaw mentioned above is squarely on point: Davidson's statements to her managers and to the Zoo's counsel about the Zoo's ongoing litigation involving those same people is not a "disclosure" to an "appropriate body" that led to her firing. As the Kentucky Supreme Court has made clear, the premise of these legal protections is that disclosure "brings to light facts not otherwise known to the recipient." *Pennyrile Allied Cmty. Servs., Inc. v. Rogers*, 459 S.W.3d 339, 345 (Ky. 2015).

In any event, Davidson offers no evidence that her disclosures to the Zoo, rather than Butrum, caused her termination. *See Harper*, 559 S.W.3d at 810 (no evidence disclosure was causally linked to retaliation). Interestingly—and incongruously—this theory of zoo-disclosure causation differs from her theory of Butrum-disclosure causation she describes regarding her retaliation claim. So for different claims, Davidson focuses on different actions as the cause of the same termination. Neither theory, of course, finds any evidentiary support beyond her own conjecture. In contrast, the Zoo provides specific evidence that it fired Davidson because it believed she leaked to Butrum and makes no mention of her "disclosures" to anyone else. Termination Letter (listing policy violations related to the leaks to Butrum in 2016 and 2017, before her alleged "disclosure" to the Zoo officials in 2018). So the Zoo did not take adverse action against Davidson because of the disclosure she claims was protected. *See Davidson*, 152 S.W.3d at 251.

## D. Defamation fails because there is no proof of actual malice

In the state unemployment proceeding that Davidson faults the Zoo for not appealing, *see above*, she also claims that the Zoo defamed her by making false statements to the Kentucky Unemployment Insurance Commission about her leaking, Compl. ¶¶ 53–54; Ans. to Interrogatory No. 20. Defamation requires a plaintiff to prove: (1) a false statement; (2) an unprivileged publication to a third

party; (3) culpability of at least negligence; and (4) actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281–82 (Ky. 2014). Davidson's argument for falsity—like her argument for pretext—relies completely on her denial of leaking confidential information to Butrum, implying that the Zoo's contrary allegations are false. Compl. ¶¶12–18; Response at 15–16.

Davidson's contention faces a couple hurdles. To begin, Louisville and its agents are immune from "torts involving intentional conduct," including defamation suits. *Carter v. Pfannenschmidt*, 467 S.W.2d 777, 778 (Ky. 1971) (ruling that Jefferson County Board of Education was immune from defamation suits); *Tinch v. Jefferson Cty. Pub. Sch. Sys.*, No. 3:12-cv-844, 2016 WL 1574149, at *4 (W.D. Ky. Apr. 19, 2016) (same); *Fletcher-Hope v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:18-CV-00469, 2019 WL 498853, at *5 (W.D. Ky. Feb. 8, 2019) (same for Louisville Metro). That should be the end of this story.

While the Zoo cites some of these cases, however, the focus of the parties' debate concerns whether the Zoo acted with malice as required under a different and more qualified privilege. MSJ at 24–26; Response at 15–16. There appears to be two variants of this claimed privilege. The first is "where the communication is one in which the party has an interest and it is made to another having a corresponding interest." *Toler*, 458 S.W.3d at 282 (quotation omitted). This privilege often applies in the employment context, where an employer needs to be able to report issues up the chain of command, investigate suspicions, and terminate employees. *See id.* at 282–83; *Dossett v. New York Min. & Mfg. Co.*, 451 S.W.2d 843, 846 (Ky. 1970); *Stewart v. Pantry, Inc.*, 715 F. Supp. 1361, 1367 (W.D. Ky. 1988). The second privilege applies to statements provided in "quasi-judicial/administrative proceedings," such as unemployment proceedings. *Hawkins v. Miller*, 301 S.W.3d 507, 509 (Ky. Ct. App. 2009) (statements made in unemployment proceedings are privileged); *MacGlashan v. ABS Lincs KY, Inc.*, No. 5:13-cv-00135, 2014 WL 4999199, at *3 (W.D. Ky. Oct. 7, 2014) (same); KRS § 411.060 ("[A] document presented, filed, or used in any proceeding before any state or city legislative or executive body, board or officer, shall be privileged, unless it is proved that the publication was maliciously made."). At the very least, the Zoo's statements are privileged because they were made as part of Davidson's unemployment proceeding. *Hawkins*, 301 S.W.3d at 509 (finding statements in exact same context privileged). Davidson doesn't contest this. Response at 15–16.

Once this privilege attaches, however, it can be rebutted, as it is only a qualified privilege. *Toler*, 458 S.W.3d at 283–84. The privilege can be rebutted if the plaintiff shows it was abused with "actual malice." *Id.* at 283–84 (actual malice must be shown even if the alleged defamation was per se defamatory). Abuse can be proven in four ways: "(1) the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; (2) the publication of the defamatory matter for some improper purpose; (3) excessive publication; or (4) the publication of defamatory

matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged." *Id.* (quotations omitted). Davidson argues actual malice based on its traditional definition: "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); Response at 15–16. Merely asserting that the statements were false is insufficient, as "people are sometimes wrong without even suspecting it." *Harstad v. Whiteman*, 338 S.W.3d 804, 813 (Ky. Ct. App. 2011). A plaintiff also must prove that the alleged defamer knew his statement was false, or made it in reckless disregard for its truth. *Id.* Davidson has provided no such proof.

Davidson's only offering is her own denial of the leaks. Compl. ¶¶ 12–18; Response at 15–16. By definition, this is not enough. *See Harstad*, 338 S.W.3d at 813 (denial "is not material to the issue of malice"); *Butrum*, 2020 WL 1238268, at *10 ("allegations of her verified complaint" insufficient to show actual malice). Realizing this, Davidson argues that two types of circumstantial evidence here can only be explained by malice. Response 15–16.

*First*, Davidson asserts that the Zoo reversed its position by not contesting her appeal, indicating the Zoo knew the claims against her were false. *Id.* This baseless speculation isn't evidence. Besides, it doesn't even show that the Zoo changed its position. A party can decline to oppose an appeal for numerous benign reasons, including cost. Davidson provides no evidence to the contrary—and certainly nothing that could be construed as evidence of knowledge of falsehood.

*Second*, Davidson argues that the Zoo has failed to confirm her previous employment for employers who might hire her, revealing ill will. *Id.* Again, this is not evidence that the statements the Zoo made about her in the administrative-benefits context are false. If anything, the Zoo's reticence tends to show that the Zoo really believes she leaked. But without evidence of motive, it is impossible to conclude these actions are malicious or reflect knowledge of falsity.[5] So Davidson has no evidence to prove that the Zoo knew or should've known its claims were false. The overwhelming evidence is to the contrary. *See Scott*, 550 U.S. at 380. And it at least shows a good-faith belief by the Zoo. Because Davidson is incapable of proving actual malice to a reasonable jury, her defamation claim must fail.

## E. The Zoo's conduct wasn't outrageous

Davidson also presses a claim for the tort of outrage based on the Zoo allegedly making false statements about her in order to fire her. Response at 18. Outrage requires proof that the defendant's conduct was (1) intentional or reckless, (2) outrageous and intolerable, and (3) caused (4) the plaintiff severe emotional distress.

---

[5] To the extent Davidson argues the Zoo's failure to confirm her employment also constitutes defamation, Response at 16, this doesn't involve is a statement at all. Wordlessly declining to confirm a true thing is not the same as publishing a false statement.

*Burgess v. Taylor*, 44 S.W.3d 806 (Ky. App. 2001). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (quotation omitted). The tort of outrage is a gap-filler, meaning it can only succeed when the plaintiff cannot otherwise obtain relief. *Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012). But it can be pled as an alternative to other claims. *Id.*

This claim fails for the same evidentiary reasons discussed at length above. The record here could lead a reasonable jury to only one conclusion: that the Zoo had a good-faith basis for believing Davidson was leaking confidential information. Firing her based on this belief and telling others about this belief, after a long investigation and a significant amount of evidence, is hardly outrageous or intolerable. Courts in other jurisdictions have ruled that termination based on a credible determination that an employee violated a policy cannot be outrageous. *See Emmett v L.T.V. Aerospace & Defense Co.*, 784 F. Supp. 1390 (WD Ark. 1992) (no liability because credible testimony indicated plaintiff falsified documents); *Fleming v United Parcel Service*, Inc., 604 A.2d 657 (N.J. 1992) (no liability based on termination for suspected theft). The Zoo acted on plenty of evidence that, even if mistaken, did not render the Zoo's conduct outrageous. Similarly, even if the allegations were false, no evidence indicates the Zoo spread allegations with intent or reckless disregard regarding Davidson's emotional distress. *Childers*, 367 S.W.3d at 580.

## F. No existing third-party contract could support a tortious-interference claim

Davidson's final standalone claim is that the Zoo tortiously interfered with a business contract by wrongly accusing her of leaking confidential information. Compl. ¶ 60; Ans. Interrog. No. 21. When asked what business relationship was disrupted, Davidson said her job at the Zoo and her ability to seek future employment within the Louisville government. Ans. Interrog. No. 7. The problem with Davidson's position is that a party cannot interfere with its own contract; a third party is required to make out this type of claim. *See Watts v. Lyon Cty. Ambulance Serv.*, 23 F. Supp. 3d 792, 812–13 (W.D. Ky. 2014) (citing *Harstad*, 338 S.W.3d at 814). The Zoo cannot be a third party to its own contract. *See Brown & Brown of Kentucky, Inc. v. Walker*, No. 2020-CA-1265-MR, 2022 WL 1122503, at *12 (Ky. Ct. App. Apr. 15, 2022) ("the [defendant] cannot be a party to the contract… the [defendant] must be a stranger to the contract"). The same is true of the Louisville government, which is technically her true employer and the defendant in this case. *See Hackney v. Lincoln Nat'l Fire Ins. Co.*, 657 F. App'x 563, 577 (6th Cir. 2016) (agent of an employer cannot interfere with the employer's contract with an employee). So Davidson cannot point to an existing business relationship with a third party that was disrupted as a result of the Zoo's conduct, ruling out a tortious-interference claim.

Davidson's only real response is that the Zoo's position is "pure sophistry" because she has been unable to get jobs with other potential employers as a result.

Response at 19. But it is Davidson's position that is pure sophistry. Davidson does not identify any existing contract that the Zoo interfered with; she just says that no potential employers wish to *offer* her an employment contract going forward. A party cannot interfere with a contract if no contract already exists. *Griffin v. Jones*, 170 F. Supp. 3d 956, 968 (W.D. Ky. 2016) ("[A] party claiming tortious interference with a contract must show that a contract existed between it and a third party followed by a breach by the third party."); *see also Seeger Enterprises, Inc. v. Town & Country Bank & Tr. Co.*, 518 S.W.3d 791, 795 (Ky. Ct. App. 2017) (failure to prove a valid existing contract doomed tortious interference claim). So the fact that others are unwilling to create a new employment contract with Davidson as a result of her termination is irrelevant to this contract claim.

## G. Punitive damages are unavailable since Davidson's whistleblower claim fails

Finally, Davidson claims the Zoo's allegedly malicious conduct entitles her to punitive damages. Compl. ¶ 56. Punitive damages are, of course, a remedy rather than a cause of action. *Price v. AgriLogic Ins. Servs.*, LLC, 37 F. Supp. 3d 885, 901 (E.D. Ky. 2014). In addition, "no punitive damages are allowed [against a municipality] unless expressly authorized by statute." *D.H. v. Matti*, No. 3:14-CV-732, 2015 WL 4530419, at *8 (W.D. Ky. July 27, 2015) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n.21 (1981)). So Davidson must specify the statute that expressly authorizes her to seek punitive damages against a municipality. Davidson appears to agree with this, and notes that the Kentucky Whistleblower Act allows for punitive damages. Response at 20; KRS 61.990(4); *Butrum v. Louisville Metro. Gov't*, No. 3:17-cv-330, 2020 WL 1238268, at *10 (W.D. Ky. Mar. 13, 2020). Davidson's claim for punitive damages therefore rises and falls with her whistleblower claim. Since that claim fails, so too must Davidson's claim for punitive damages. And, in any event, Davidson cannot show malice for all the reasons described above. *See Price*, 37 F. Supp. 3d at 901.

## III.    CONCLUSION

The Court grants the Louisville Metropolitan Government's Motion for summary judgment (DN 19).

Benjamin Beaton, District Judge

United States District Court

August 17, 2022

14